# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

LINDA MAGNELLO,
    Plaintiff,

v.      3:05cv1176(WWE)

TJX COMPANIES, INC.,
    Defendant.

## MEMORANDUM OF DECISION ON
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Linda Magnello alleges that TJX Companies violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and chapter 151B of the Massachusetts General Laws ("M.G.L."). Specifically, plaintiff advances claims pursuant to theories of disparate treatment and disparate impact. Defendant has filed a motion for summary judgment.

## BACKGROUND

The parties have submitted briefs and statements of fact with supporting exhibits and affidavits. These materials reveal that the following facts are not in dispute.

Plaintiff was born on August 11, 1950. She commenced work as an assistant buyer in the retail clothing industry in 1978 for Gold Circle, a mass market retail chain. Between 1978 and 2002, plaintiff worked at various retail stores as a buyer of ladies' wovens, misses' sportswear, and women's plus sizes. Between 1984 and 2002, plaintiff worked for Ames as plus-size buyer. She left Ames when it declared bankruptcy and closed its stores. Her last salary at Ames was $107,000 per year.

Defendant owns and operates retail stores including A.J. Wright, T.J. Maxx, TK Maxx, Marshalls, and Bob's Stores.

In September 2002, Joseph Ettore, former CEO of Ames, called plaintiff to inform her that he had recommended her to George Iacono, President of A.J. Wright, as a buyer for ladies' plus sizes.

On September 12, 2002, Magnello interviewed with five divisional merchandisers from A.J. Wright in Framingham, Massachusetts.

On September 18, 2002, Magnello called Julie Gregorich at Human Resources for A.J. Wright, and she left a voicemail message with Gregorich inquiring about the status of her application and whether she could have feedback on her interview performance. A male individual from A.J. Wright returned her call and indicated that he would look into the status of her application and her interview performance. Magnello claims that she never received a response from A.J. Wright as to the status of her application.

In November 2002, Magnello applied for a buyer position with TK Maxx. On December 12, 2002, Magnello interviewed with Stein Rachmill, who explained that TK Maxx sought a ladies' sportswear buyer for European stores. Magnello's application for this position was rejected.

In March 2004, Magnello applied on-line for a position as a girl's apparel buyer at Bob's Stores, a division of TJX. Plaintiff never received a response to this application. Andrew Annunziata, the divisional merchandise manager, made the decision to hire an individual who had specific experience in buying for girls.

TJX runs an entry-level training program called the Planning Allocation School of

Excellence or "PASE." A candidate hired into the PASE program undergoes twelve weeks of classroom training. At the conclusion of the training, an employee assumes the position of Allocation Analyst. An Allocation Analyst's job function is limited to allocating and distributing goods that have already been purchased by a buyer. Candidates apply for a position in the PASE program by applying on-line, attending an information session, or participating in on-campus interviewing at a college.

On May 3, 2004, plaintiff attended a TJX Buyer Training Information Session in Framingham, Massachusetts. At that event, she had a brief interview.

On May 4, 2004, plaintiff received an e-mail from Carey Edmunds, Senior Staffing Specialist, inviting plaintiff to attend an in-house day program on May 14, 2004. TJX invited a total of 26 candidates to attend the program.

On May 14, 2004, Magnello had two interviews, participated in group exercises, and took written tests. Magnello was interviewed by Shari Shakun, a Merchandise Manager, and Rose Riggieri, Assistant Vice President in ladies' sportswear. Shakun noted the following about plaintiff's interview:

> Has interviewed with Bob's/AJs for buying positions. She is definitely overqualified for analyst position — could be considered as a Planning Manager candidate. Has a lot of strong allocation background from her buying positions. Very aggressive business driver. Very much a student of her business. Personality a little too serious.

Plaintiff participated in a math test, a Product Analysis Test, a merchandising test, and a Peer Meeting Exercise.

At the end of the day, TJX personnel involved in interviewing for the PASE Program met to decide upon who should receive offers. Five individuals, all of whom

were under 40 years of age, were hired and entered the PASE program. Riggieri, one of the interviewers, told Maribeth Kelley and Carey Edmunds, two members of the Human Resources Department involved in the hiring efforts, that plaintiff should be referred as a candidate for buying positions. Kelley forwarded plaintiff's resume to A.J. Wright and Bob's Stores divisions for consideration as a buyer.

On May 17, 2004, as a result of Kelley's referral, Kelle Giachello, Manager of People Services for Bob's Stores, called plaintiff to set up an interview appointment for May 19, 2004.

On May 19, plaintiff met with Giachello, who indicated that a girls' buyer position had already been filled. During the interview, Giachello believed that Magnello exhibited a dowdy appearance, did not exhibit passion about work that measured up to the company's leadership principles, and did not have the outgoing personality necessary for a successful buyer. Giachello also found that Magnello was not a good fit for Bob's because her most recent long-term work was at Ames as a plus-size fashion buyer. Giachello did not perceive of Ames as a retailer that sold quality, stylish fashions, and Bob's did not carry plus sizes.

On May 26, Iacono, President of A.J. Wright, called plaintiff, stating that he had received a positive reference about her from Ettore, former CEO of Ames. Iacono informed plaintiff that A.J. Wright was planning an expansion of the ladies' area. He passed on plaintiff's information to his merchandising manager.

When Iacono reviewed Magnello's resume, he noted that she had only discount experience but no "off-price" experience for a retailer such as A.J. Wright, and that she

had moved around too much between jobs. He did not believe that she would be a good fit for A.J. Wright.

On June 3, 2004, plaintiff received an e-mail informing her that she was not accepted into the PASE Buyer Training Program.

On June 8, plaintiff sent an e-mail to Giachello, inquiring whether any further decisions had been made as to additional buyer positions.

On June 23, plaintiff attended an open house in Framingham for open positions in merchandising and operation in Bob's field stores. She interviewed with Sue Dube, the field recruiting manager, and with Kathy Nelson, District Human Resources Manager at Bob's Stores.

On June 24, 2004, Giachello sent an e-mail to plaintiff indicating that she would be contacted if there was any interest in hiring her. Plaintiff received no further communications from Giachello.

In July 2004, plaintiff received a letter informing her that she would not be considered for the Bob's Stores field positions for which she had interviewed on June 23, 2004.

On September 28, 2004, plaintiff filed a charge of discrimination against defendant with the EEOC, alleging age discrimination based on her failure to be accepted into the Buyer Training Program. On March 6, 2005, the EEOC issued the following Determination:

> from May 2001 to May 2004, approximately 89% of the individuals hired by the Respondent for its Buyer and Buyer related positions were under forty years of age. This statistic is significant and is a justifiable result of the Respondent's hiring practice that includes targeting individuals who are under forty years of age through college postings.

5

DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 249.

Time-Barred and Unexhausted Allegations of Discrimination

Defendant requests the Court to strike, as time-barred, plaintiff's allegations concerning her employment efforts with defendant other than those related to the Buyer Training Program, which allegations were timely exhausted in the administrative charge.

"To sustain a claim for unlawful discrimination under Title VII and/or the ADEA, a plaintiff must file administrative charges with the EEOC within 300 days of the alleged discriminatory acts."  Flaherty v. Metromail Corp., 235 F.3d 133, 136 n.1 (2d Cir. 2000); 29 U.S.C. § 626(d)(2) (establishing 300-day time bar for ADEA claims).  "[A]n employer performs a separate employment practice each time it takes adverse action against an employee, even if the action is simply a periodic implementation of an adverse decision previously made."  Elmenayer v. ABF Freight Sys., Inc., 318 F.3d 130, 134 (2d Cir. 2003).

In this instance, plaintiff filed her EEOC charge on September 28, 2004. Therefore, all conduct that occurred prior to December 3, 2003 (300 days prior to the filing of the charge) is time-barred from constituting an actionable ADEA claim. Nevertheless, plaintiff may still offer evidence regarding the time-barred conduct as "relevant background evidence" in support of her timely claim.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 112 (2002).

The Court may consider the unexhausted failure to hire claims if any are "reasonably related" to the discrimination alleged in the agency charge.  Butts v. City of New York Dep't of Hous. Pres. and Dev., 990 F.2d 1397, 1401 (2d Cir. 1992), superseded by statute on other grounds as stated in, Hawkins v. 1115 Legal Servs. Care, 163 F.3d 684, 693 (2d Cir. 1998); Conroy v. Boston Edison Co., 758 F. Supp. 54, 58 (D. Mass. 1991) (same for Massachusetts state law claim).  The exhaustion requirement exists to afford the administrative agency the opportunity to investigate, mediate, and take remedial action.  Stewart v. United States Immigration and Naturalization Serv., 762 F. 2d 193, 198 (2d Cir. 1985); see also Miller v. Int'l Tel. & Tel.

Corp., 755 F.2d 20, 26 (2d Cir. 1985) (statutory notice provision is meant "to encourage settlement of discrimination disputes through conciliation and voluntary compliance.").

The Second Circuit has "recognized three kinds of situations where claims not alleged in the EEOC charge are sufficiently related to the allegations in the charge": (1) where the alleged conduct is within the scope of the EEOC investigation which conduct can reasonably be expected to grow out of the charge of discrimination; (2) where the alleged conduct would constitute retaliation for filing a timely EEOC charge; or (3) where the alleged conduct constitutes post-agency filing incidents of discrimination perpetrated in precisely the same manner as alleged in the EEOC charge. Butts, 990 F.2d at 1402-03.

In considering the first test under Butts, courts consider whether the allegations of the agency charge would prompt the agency to broaden the scope of its investigation. Smering v. FMC Corp., 2004 WL 2191561 *9 (W.D.N.Y. 2004); cf. Samimy v. Cornell Univ., 961 F.Supp. 489, 492 (W.D.N.Y. 1997) (where an agency charge alleges specific instance of discrimination, a reasonable administrative investigation is confined to charges specified). However, courts have found that claims involving the same factual basis are reasonably related. Santiago v. Gen. Dynamics Electric Boat Div., 2006 WL 3231413 (D. Conn. 2006) (further incidents of disparate treatment based on national origin and gender discrimination were reasonably related to EEOC charge allegations of national origin and gender discrimination by the same supervisor).

Plaintiff argues that her unexhausted claims concerning other failed attempts to secure employment with defendant are within the scope of the EEOC investigation, and

she has provided documentation indicating that she informed the EEOC of her attempts to secure employment with defendant in 2004.

However, the Court finds that the administrative allegations concerning her rejection from the PASE program would not give the EEOC fair notice to investigate A.J. Wright's and TK Maxx's failure to hire her in 2002, and Bob's Stores failure to hire her for a Field Store Manager position in 2004. An investigation into these incidents would not reasonably grow from plaintiff's administrative allegations concerning the PASE program because these incidents lack any common nexus to the administrative charge. The 2002 incidents are remote in time from the agency charge, and the claim concerning the Field Store Manager positions involved decisionmakers who appear to have had no contact with the decisionmakers involved in the PASE Program.

Similarly, these unexhausted claims do not constitute further incidents of discrimination carried out in precisely the same manner as that alleged in the EEOC charge because the claims involved differing positions, individuals and corporate divisions. See Saminmy, 961 F.Supp. at 493 (not further incidents of similar discriminatory practice where different decisionmakers were involved).

However, construing the inferences of fact most liberally in favor of plaintiff, the Court finds that an investigation into age discrimination relating to plaintiff's PASE program application may reasonably have grown into an investigation into the results of Kelley's referral to A.J. Wright and Bob's Stores, which referral resulted at least in part from the decision to reject plaintiff's application for the PASE program. Accordingly, the Court will consider the merits of plaintiff's claims of failure to hire by Bob's and A.J. Wright for buying positions in 2004.

Disparate Treatment

Defendant asserts that plaintiff cannot establish a prima facie case of disparate treatment under either the ADEA or M.G.L. chapter 151B.

The Court must analyze plaintiff's state and federal disparate treatment claims according to the burden shifting process established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); Larsen v. Simonds Industries, Inc., 337 F. Supp. 2d 331, 335 (D. Mass. 2004). It is well settled that to establish a prima facie claim of discrimination, the plaintiff must demonstrate that (1) she belongs to a protected class; (2) she was performing her duties satisfactorily; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. Although the plaintiff's initial burden is not onerous, she must show that her termination was not made for legitimate reasons. Thomas v. St. Francis Hosp. and Med. Ctr., 990 F. Supp. 81, 86 (D. Conn. 1998).

If the plaintiff establishes a prima facie case, the defendant must articulate a legitimate, non-discriminatory business reason for the alleged discriminatory action. The plaintiff must then prove by a preponderance of the evidence that the supposed legitimate reason is actually a pretext for discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 515 (1993).

In this instance, plaintiff has established the prima facie case. Defendant proffers that it did not hire plaintiff for the PASE program because she was perceived as being overqualified; that Giachello rejected plaintiff as a candidate for buying positions at Bob's because neither plaintiff's past experience nor her appearance during the

interview impressed her; and that Iacomo found that plaintiff was not a good fit for A.J. Wright because she had no "off-price" experience and because she had moved around too much.

The Court finds that the circumstances and the evidence adduced concerning plaintiff's work experience and skills give rise to disputed issues of fact as to whether defendant's explanations are pretextual for age discrimination. The Court will deny summary judgment on the claims of disparate treatment based on age discrimination.

Disparate Impact

Defendant argues that plaintiff's disparate impact claims fail because plaintiff has not (1) identified any specific employment practice responsible for any statistical disparity, (2) shown a significant statistical disparity with evidence of the relevant applicant pool, or (3) shown that any hiring practice was "unreasonable."[1]

To establish a prima facie case of disparate impact, a plaintiff must identify a specific employment practice that is allegedly responsible for any statistical disparity on a protected class. Smith v. City of Jackson, 544 U.S. 228, 241 (2005). Statistical data may be admitted to show a disparity in outcome between groups, but such data must be sufficiently substantial to raise an inference of causation. Watson v. Forth Worth Bank & Trust, 487 U.S. 977, 994-5 (1988).

Once the plaintiff establishes a prima facie case, the employer must proffer a

---

[1]Defendant maintains that Massachusetts law has yet to recognize a claim for disparate impact based on age under M.G.L. chapter 151B. However, for purposes of this ruling, the Court assumes that a disparate impact claim under chapter 151B would follow federal precedent. See Cox v. New England Tel. & Tel. Co., 414 Mass. 375, 385 (1993) (following federal precedent in context of disability disparate impact under c. 151B).

legitimate business justification for the practice, but the plaintiff bears the burden of proving that the employer's justification is unreasonable. Meacham v. Knolls Atomic Power Lab., 461 F.3d 134, 141 (2d Cir. 2006). An employer may not be liable where the adverse impact was based on a reasonable factor other than age. Smith, 544 U.S. at 1543.

Plaintiff maintains that defendant's use of college recruitment constitutes a specific employment practice that adversely results in a disparate impact. Construing the inferences of fact most liberally for plaintiff, the Court accepts that plaintiff has identified a specific employment practice allegedly responsible for a statistical disparity.

Nevertheless, plaintiff has not established a prima facie case. She has failed to provide statistics of the "kind and degree sufficient" to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group. Smith v. Xerox Corp., 196 F.3d 358, 365 (2d Cir. 1999), overruled on other grounds, Meachem, 461 F.3d at 141. Statistics almost always occupy "center stage" in showing the link between the practice and its disparate impact upon a protected group. Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147, 160 (2d Cir. 2001).

Generally, in a disparate impact case concerning discriminatory hiring, the relevant comparison is between the composition of the individuals in the at-issue jobs and the qualified population in the relevant labor market. Malave v. Potter, 320 F.3d 321, 325 (2d Cir. 2003). Alternative comparisons may be appropriate where such statistics are "difficult if not impossible to ascertain." Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 651 (1989). Statistical results are not "persuasive" without a

"close fit between the population used to measure disparate impact and the population of those qualified for a benefit."  Wright v. Stern, 450 F. Supp. 2d 335, 337 (S.D.N.Y. 2006).

Plaintiff offers as evidence only the percentage of individuals under 40 hired into the PASE program.  However, plaintiff has adduced no evidence or statistical comparison that would give rise to an inference of causation between defendant's employment practice and the disproportionate impact upon applicants over 40.  Plaintiff has not proffered information about the applicant pool or proposed any alternative population or methodology to gauge the alleged disparate impact.  Plaintiff cannot establish a prima facie case without some evidence of a causal connection between the offending practice and the alleged disparate impact.  See Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 575 (2d Cir. 2003) (some analytical mechanism must be offered to determine disproportionate impact); Fahmy v. Duane Reade, Inc., 2006 WL 1582084, *5 (S.D.N.Y. 2006).  Accordingly, the Court will grant summary judgment in defendant's favor on plaintiff's disparate impact claim.  See LeBlanc v. Great American Ins. Co., 6 F.3d 836, 847 (1st Cir. 1993).

Further, even assuming that plaintiff established a prima facie case, summary judgment is still appropriate.  Defendant asserts that it is appropriate and reasonable to recruit recent college graduates for a training program with entry-level pay.  In light of the job requirements and pay level, plaintiff has not demonstrated that defendant's use of college recruitment is unreasonable.  See Sack v. Bentsen, 51 F.3d 264 (1st Cir. 1995) (ADEA does not prevent employers from seeking out recent college graduates for entry-level positions, providing that employer does not discriminate based on age).

CONCLUSION

Based on the foregoing, defendant's motion for summary judgment [doc. # 111] is GRANTED in part and DENIED in part. The Court grants summary judgment on all claims with the exception of the disparate treatment claims related to plaintiff's applications to the PASE program and A.J. Wright and Bob's Stores divisions resulting from Kelley's referral.

_____/s/_____

Warren W. Eginton
Senior U.S. District Judge

Dated this \_20\_\_\_th day of May, 2008 at Bridgeport, Connecticut.